UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**JOSHUA ZIVKO,**

    **Plaintiff,**

  v.                                              Case No. 19-CV-169

**ROBERT SHAW,** *et al.***,**

    **Defendants.**

---

### DECISION AND ORDER ON DEFENDANTS'
### MOTION FOR SUMMARY JUDGMENT

---

Joshua Zivko, who is representing himself, brings this lawsuit under 42 U.S.C. § 1983. He alleges that the defendants violated his civil rights at the Sheboygan County Detention Center ("SCDC"). (Docket # 1.) I screened the complaint and allowed him to proceed with two claims: (1) that Robert Shaw denied Zivko his medication in retaliation for multiple inmate grievances he filed; and (2) that Michael Oppeneer knew about Shaw's pattern of retaliation and failed to intervene. (Docket # 11.) This matter is before me on defendants' motion for summary judgment. (Docket # 21.) For the reasons discussed below, I will grant defendants' motion for summary judgment and dismiss this case.

### FACTS

The relevant facts in this case are undisputed. (*See* Compl., Docket # 1; Def. Proposed Findings of Fact, Docket # 23; and Pl. Br., Docket # 30.) Zivko is a former inmate at SCDC. (Docket # 23, ¶ 1.) Defendants Robert Shaw and Michael Oppeneer are correctional officers at SCDC. (*Id.* ¶ 11.)

On December 28, 2018, Shaw made "rounds" on Zivko's pod. (*Id.* ¶¶ 11–13.) At around 6:54 p.m., Shaw passed Zivko's cell and propped the cell door open. (*Id.* ¶ 11.) Shaw explains that it's common practice to keep cell doors propped open in Zivko's pod so that control room officers can monitor activity even when the cell doors are not locked. (*Id.* ¶ 8.) Within a minute of Shaw propping open the cell door, Zivko closed his door. (*Id.* ¶ 12.)

Zivko's door remained closed until Shaw made rounds for a second time that evening, about forty-five minutes later. (*Id.* ¶ 13.) At that time, Shaw contacted the control room and had Zivko's cell door locked. (*Id.*) Shaw explains that correctional officers have discretion to lock an inmate's cell door when the inmate fails or refuses to keep his cell door propped open. (*Id.* ¶ 9.) Shaw states that he locked Zivko's door the second time he did rounds because Zivko failed to keep his door propped open the first time he conducted rounds. (*Id.* ¶ 13.) Shaw continued his rounds. (*Id.*)

After Shaw locked Zivko's door, Zivko contacted the control room twice asking to be let out for his inhaler. (*Id.* ¶ 15.) Both times he spoke to a female control officer who told him he would have to wait for Shaw, who was helping the nurse pass out medication to other inmates. (*Id.*) About forty-seven minutes after Shaw initially locked Zivko's cell door, Zivko went to the control room and received his medication. (*Id.* ¶ 16.) Zivko and Shaw did not interact with each other that evening. (*Id.* ¶ 14.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is required where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). When

considering a motion for summary judgment, the court takes evidence in the light most favorable to the non-moving party and must grant the motion if no reasonable juror could find for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

A party asserting that a fact cannot be disputed or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A)-(B). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

## ANALYSIS

Zivko claims that because of prior grievances that he filed, Shaw retaliated against him by locking him in his cell and denying him his inhaler. The defendants move for summary judgment asserting that Zivko fails to produce evidence from which a reasonable jury could conclude that Shaw retaliated against him.

3

To state a claim for retaliation, Zivko must establish that: (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation likely to deter future protected activity; and (3) his protected activity at least partially motivated the deprivation suffered. *Streckenbach v. Meisner*, 768 F. App'x 565, 569 (7th Cir. 2019) (citing *Walker v. Groot*, 867 F.3d 799, 803 (7th Cir. 2017)). If Zivko establishes these three elements, "the burden then shifts to the defendants to show that they would have taken the action despite the bad motive." *Mays v. Springborn*, 719 F.3d 631, 635 (7th Cir. 2013).

Here, the defendants concede that Zivko can meet the first element because he filed four grievances prior to the relevant date. However, they argue that Zivko fails to establish the second and third elements. I agree.

First, Zivko does not present evidence showing that Shaw knew about his prior grievances. Defendants indicate that prior to the December 28, 2018 incident, Zivko filed four inmate grievances at SCDC in November and December 2018. (See Docket # 23, ¶¶ 3–6; see also Docket # 24, Ex. C–F, at 7–15.) None of Zivko's inmate grievances directly involve Shaw. (*See id.*) Zivko does identify two documents showing that he generally complained about Shaw during a disciplinary hearing, (*see* Docket # 32-1), but there is no evidence suggesting that Shaw heard Zivko make these complaints or that he otherwise knew about Zivko's grievances about him, (*see id.*) Indeed, Shaw testified that he did not know Zivko had grievances against him. (Shaw Aff., Docket # 25, ¶ 15.)

Second, even if Shaw did know about Zivko's grievances against him, Zivko presents no evidence showing that one of Shaw's motivations for locking his door on December 28 was to prevent him from getting his inhaler. *See Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008) (concluding that plaintiff must show that the First Amendment protected activity was

4

"at least a motivating factor" in the defendant's decision to take retaliatory action); *see also Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015). Shaw states that the only reason that he asked the control room to lock Zivko's door the second time he did rounds was because Zivko failed to keep his door propped open the first time he conducted rounds. (Shaw Aff., Docket # 25, ¶ 12.) Zivko appeared to admit as much during his deposition. (*See* Zivko Dep., Docket # 26, Ex. A, at 19–20.) When asked if Shaw locked his cell door on December 28 because he failed to keep the door propped open, Zivko responded, "I guess yeah, you know, you know I guess that was the ultimate punishment is locking us in, I guess, yeah." *Id*.

Zivko's admission aside, Zivko and Shaw never interacted with each other that evening. Thus, it's unclear how Shaw would have known that Zivko wanted his inhaler at the time he locked the cell door. When Zivko did later ask for his inhaler, he spoke to a female correctional officer, not Shaw. To the extent Zivko "was already suffering a slight asthma attack" at that time he spoke to the female correctional officer on the intercom, (*see* Compl., Docket # 1 at 3), Shaw was not aware of it (Shaw Aff., Docket # 25, ¶ 12). Therefore, Zivko also does not have evidence showing that "a motivating factor" for locking his cell door on December 28 was to prevent him from getting his inhaler.

Zivko suspects that Shaw "has a vendetta" against him, (*see* Compl., Docket # 1 at 4), but speculation alone is not enough to survive summary judgment, *See Daza v. Indiana*, 941 F.3d 303, 308 (7th Cir. 2019) (noting that the court need not accept inferences that are only supported by speculation or conjecture); *see also Springer v. Durflinger,* 518 F.3d 479, 484 (7th Cir. 2008) (concluding that speculation concerning retaliatory motives cannot create a genuine issue of material fact). Based on the record, no reasonable jury could conclude that

Shaw denied Zivko his inhaler on December 28, 2018 to retaliate against him for filing inmate grievances.

Given that Zivko cannot establish an underlying retaliation claim against Shaw, he cannot establish a failure to intervene claim against Oppeneer. *See Coleman v. City of Peoria*, 925 F.3d 336, 351 (7th Cir. 2019) ("conspiracy, failure to intervene, and municipal liability claims each depend on proof of an underlying constitutional violation."); *see also Rosado v. Gonzalez*, 832 F.3d 714, 718 (7th Cir. 2016) ("In order for there to be a failure to intervene . . . there must exist an underlying constitutional violation.") Accordingly, I will grant defendants' motion for summary judgment and dismiss this case.

**IT IS THEREFORE ORDERED** that defendants' motion for summary judgment (Docket # 21) is **GRANTED** and this case is **DISMISSED**. The Clerk of Court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure

6

60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 10th day of August, 2020.

BY THE COURT:

_____
NANCY JOSEPH
United States Magistrate Judge